**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | |
|---|---|
| **FIFTH THIRD BANK, NATIONAL ASSOCIATION**<br>38 Fountain Square<br>Cincinnati, OH 45263<br><br>            **Plaintiff,**<br><br>v.<br><br>**LOW VOLTAGE SERVICE, INC.**<br>3915 Winston Drive<br>Hoffman Estates, IL 60192<br><br>and<br><br>**EVA SCHALLHORN**<br>3915 Winston Drive<br>Hoffman Estates, IL 60192<br><br>            **Defendants.** | **CASE NO.**<br><br>**Judge** _____<br><br><br>**COMPLAINT ON LOAN AGREEMENT AND GUARANTY** |

Plaintiff Fifth Third Bank, National Association ("Plaintiff"), through undersigned counsel, states for its Complaint:

### BACKGROUND INFORMATION

1. Plaintiff is a federally chartered institution with its principal place of business in Cincinnati, Hamilton County, Ohio.

2. Defendant LOW VOLTAGE SERVICE, INC. ("Borrower") is an Illinois corporation, with its last known principal place of business in Hoffman Estates, Illinois.

3. Defendant Eva Schallhorn ("Guarantor") is an individual last known residing in Hoffman Estates, Illinois.

4. This Court has subject-matter jurisdiction pursuant to Ohio Rev. Code § 2305.01, as the amount in controversy exceeds $15,000.

5.  This Court has personal jurisdiction over Defendant Borrower and Guarantor and is the proper venue for this action pursuant to the agreements executed by the parties that are the subject of this action. *See* Loan Agreement, §24, attached hereto as Exhibit A.

## COUNT ONE - LOAN AGREEMENT

6.  Borrower executed and delivered to Plaintiff a Loan Agreement dated March 21, 2020 ("Agreement") in the principal amount of $95,000.00 pursuant to which Borrower borrowed funds from Plaintiff, with interest accruing at the Prime Rate (as defined therein) plus 2.36% per annum. A true and accurate copy of the Agreement is attached as Exhibit A.

7.  Upon acceleration, the terms of the Agreement permit Plaintiff to increase the interest rate to five percent above the stated rate of interest per annum (Prime Rate + 7.36%) ("Default Rate").

8.  Pursuant to the terms of the Agreement, Plaintiff exercised its rights to accelerate the balance due and owing under the Agreement upon demand, and Plaintiff demanded immediate payment of the outstanding balance due and owing under the Agreement. A true and accurate copy of the acceleration and demand notice is attached as Exhibit B.

9.  Borrower failed to pay the balance due under the Agreement.

10. Pursuant to the terms of the Agreement, Borrower is obligated to the repayment of attorneys' fees, costs, and expenses incurred by Plaintiff in the enforcement and collection of the Agreement.

11. Borrower owes Plaintiff on the Agreement the principal sum of $93,000.00, plus accrued but unpaid interest in the amount of $6,662.91 as of March 25, 2024, plus late fees of $85.56 and other bank fees of $75.00, plus interest that continues to accrue thereafter at the Default Rate, plus accruing fees and the costs of this action, including attorneys' fees incurred by Plaintiff.

## COUNT TWO - GUARANTY

12. Plaintiff incorporates Paragraph 1 through 11 and further states that as in inducement for Plaintiff to extend the credit evidenced by the Agreement, Guarantor executed a Guaranty of Loan Agreement dated March 21, 2020 ("Guaranty"), in which Guarantor unconditionally guaranteed payment to Plaintiff of all Borrower's obligations to Plaintiff (as defined in the Guaranty), which includes the amounts owing under the Agreement. A true and accurate copy of the Guaranty is attached as Exhibit C.

13. By virtue of the failure of Borrower to pay the amounts due under the Agreement to Plaintiff, the Guaranty is in default.

14. Pursuant to the terms of the Guaranty, Guarantor is obligated to the repayment of attorneys' fees, costs, and expenses incurred by Plaintiff in the enforcement and collection of the Guaranty.

15. Plaintiff is presently owed from Guarantor on the Guaranty the principal sum of $93,000.00, plus accrued but unpaid interest in the amount of $6,662.91 as of March 25, 2024, plus late fees of $85.56 and other bank fees of $75.00, plus interest that continues to accrue thereafter at the Default Rate, plus accruing fees and the costs of this action, including attorneys' fees incurred by Plaintiff.

WHEREFORE, Plaintiff prays for judgment as follows:

1. On Count One, Plaintiff prays for judgment against Defendant LOW VOLTAGE SERVICE, INC. for the principal sum of $93,000.00, plus accrued but unpaid interest in the amount of $6,662.91 as of March 25, 2024, plus late fees of $85.56 and other bank fees of $75.00, plus interest that continues to accrue thereafter at the default rate of the Prime Rate plus 7.36% per annum, plus accruing fees and the costs of this action, including attorneys' fees incurred by

Plaintiff;

2. On Count Two, Plaintiff prays for judgment against Defendant Eva Schallhorn in the principal sum of $93,000.00, plus accrued but unpaid interest in the amount of $6,662.91 as of March 25, 2024, plus late fees of $85.56 and other bank fees of $75.00, plus interest that continues to accrue thereafter at the default rate of the Prime Rate plus 7.36% per annum, plus accruing fees and the costs of this action, including attorneys' fees incurred by Plaintiff; and

3. For all other relief, legal and equitable, to which Plaintiff is entitled including, but not limited to, additional attorneys' fees and costs incurred by Plaintiff.

OF COUNSEL:

BRICKER GRAYDON LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 621-6464
Fax:    (513) 651-3836

Respectfully submitted,

/s/ *Patricia L. Hill*
Patricia L. Hill (0072595)
Sebastian D. West (0102248)
*Attorneys for Plaintiff*
BRICKER GRAYDON LLP
7570 Bales Street, Suite 220
Liberty Township, OH 45069
Phone: (513) 755-9500
Fax:    (513) 755-9588
E-mail: phill@brickergraydon.com

4

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

# LOAN AGREEMENT

This LOAN AGREEMENT (this "*Agreement*"), shall become effective on the date it is fully executed ("*Effective Date*"), and is by and between LOW VOLTAGE SERVICE, INC. ("*Borrower*"), and **Fifth Third Bank**, National Association. ("*Lender*").

1. LOANS. Lender hereby extends to Borrower a line of credit facility (the "*Line of Credit*") pursuant to which Lender may make loans to Borrower on a revolving basis (the "*Loan*" or "*Loans*"), upon Borrower's written request received by Lender not later than 2:00 p.m. U.S. Eastern Standard Time, in amounts not exceeding $95,000.00 in aggregate (the "*Commitment*"). Lender shall have sole and absolute discretion at all times as to whether or not to make any Loan. If the Loans at any time outstanding under the Line of Credit exceed the Commitment, Borrower will immediately re-pay the amount of such excess to Lender in cash.

2. CONDITION PRECEDENT. Lender's obligations under this Agreement, including but not limited to the disbursement of loan proceeds, are expressly conditioned on the Borrower opening and maintaining a Fifth Third Bank Business Checking or Fifth Third Bank Business Savings account ("**Account**") throughout the term of the Agreement.

3. PAYMENTS; INTEREST.

   a. All payments by Borrower under this Agreement will be in lawful money of the United States of America. All payments, including principal and interest, shall be initiated by Lender in accordance with the terms of this Agreement from Borrower through Auto BillPayer. Borrower further acknowledges and agrees to maintain payments hereunder through the Account via Auto BillPayer throughout the term of this Agreement. Each payment hereunder may be applied in the following order: accrued interest, principal, fees, charges and advanced costs.

   b. The principal sum of the Loan outstanding shall bear interest at a floating rate per annum equal to 2.36% plus the rate of interest per annum established from time to time by Lender at its principal office as its "**Prime Rate**." Monthly payments of principal and accrued and unpaid interest shall be due and payable monthly in arears, commencing on May 1, 2020, and continuing on the same day of each month thereafter. A final payment of all principal and accrued and unpaid interest and any fees, advances and charges, if any, due and payable on demand, or five years after the Effective Date (the "Maturity Date"), or upon acceleration of any Obligation(s).

   c. The Prime Rate shall change no more than once per day. Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed. Under no circumstances will the Prime Rate or any replacement rate be less than 0.000% per annum or more than the maximum rate allowed by applicable law. Borrower understands that Lender may make loans based on other rates or indices. The Prime Rate is not necessarily the lowest rate charged by Lender. If the Prime Rate becomes unavailable at any time while the Loan remains outstanding, Lender may designate a substitute rate of interest.

   d. Notwithstanding any provision to the contrary in this Agreement, in no event shall the interest rate charged on any Loan exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Agreement, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

   e. Lender shall maintain, in accordance with its usual practice, a register (electronic or otherwise) evidencing the Indebtedness of the Borrower to Lender resulting from the Loans, including the amounts of principal and interest payable and paid to Lender from time to time under this Agreement. The entries in the register shall be conclusive, in the absence of manifest error.

4. GUARANTOR INFORMATION. Borrower shall cause to be delivered to Lender fully-executed guaranties of the Loan, in a form previously approved by Lender. The Guarantor(s) shall be: EVA SCHALLHORN

5. COSTS. Borrower shall reimburse Lender for any and all fees, costs and expenses including, without limitation, reasonable attorneys' fees, and paralegal fees incurred in connection with litigation, mediation, arbitration, other alternate dispute processes, administrative proceedings and appeals of all of the same, other professionals' fees, expert fees, court costs, litigation, documentary stamp taxes, if any, intangible

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

taxes, if any, and other expenses (collectively, the "*Costs*") incurred or paid by Lender or any of its officers, employees or agents in connection with: the preparation, negotiation, procurement, review, administration or enforcement of this Agreement or any instrument, agreement, document, policy, consent, waiver, subordination (or any amendment, modification or extension to, or any replacement or substitution for, any of the foregoing). The Costs shall be due and payable upon demand by Lender. If Borrower fails to pay the Costs upon such demand, Lender is entitled to disburse such sums as Loans. This provision shall survive the termination of this Agreement, any Guaranty, and/or the repayment of any amounts due or the performance of any Obligation.

6. REPRESENTATIONS AND WARRANTIES. Borrower hereby represents and warrants to Lender as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of the Loans, and at all times any Obligations exist, the following:

a. *Organization and Qualification.* If Borrower is not a natural Person, Borrower is duly organized or incorporated, validly existing, and in good standing under the laws of its state of formation, it has the power and authority to carry on its business and to enter into and perform this Agreement, and is qualified and licensed to do business in each jurisdiction in which the failure to be so qualified and in good standing would result in a violation of such jurisdiction's applicable laws.

b. *Due Authorization.* If Borrower is not a natural Person, the execution, delivery and performance by Borrower of this Agreement and the borrowing of Loans from Lender have been duly authorized by all necessary action, and shall not contravene any of its governing or organizational instruments. Borrower's execution, delivery and performance of this Agreement and the borrowing of Loans from Lender shall not contravene any law or any governmental rule or order binding on Borrower. Borrower has duly executed and delivered to Lender this Agreement and it represents a valid and binding obligation of Borrower, enforceable against Borrower according to its terms, except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

c. *Litigation.* There are no suits, investigations or proceedings (including proceedings before any governmental body) pending against or affecting Borrower, Guarantor, or any of its members, managers, shareholders or directors, except as previously disclosed to Lender.

d. *Use of Proceeds.* Borrower certifies that the proceeds of the Loans are to be used for business purposes and Borrower shall not use any part for personal, family or household purposes.

e. *Licenses.* Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business. Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without, to the knowledge of Borrower, any conflict with the rights of any other Person. All of the foregoing is in full force and effect and, to the knowledge of Borrower, none of the foregoing is in conflict with the rights of others.

f. *Laws and Taxes.* Borrower is in compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency. Borrower has filed all required tax returns and reports (or filed appropriate extensions therefore) that are now required to be filed by it in connection with any federal, state and local tax, duty or charge levied, assessed or imposed upon Borrower or its assets, including unemployment, social security, and real estate taxes. Borrower has paid all taxes which are now due and payable.

g. *Financial Condition.* All financial statements relating to Borrower or Guarantor which have been delivered by Borrower or on its behalf to Lender are true and correct and have been prepared in accordance with generally accepted accounting principles consistently applied, unless otherwise approved in writing by Lender. Borrower nor any Guarantor, has material obligations or liabilities of any kind not disclosed in those financial statements, and there has been no material adverse change in the financial condition of Borrower or any Guarantor, nor has Borrower or any Guarantor suffered any material damage, destruction or loss since the submission of the most recent financial information to Lender.

h. CONTINUED EFFECT. The acceptance by Borrower of the proceeds of each Loan

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

shall be deemed to constitute a representation and warranty by Borrower that (i) each of the representations and warranties contained herein and any other document delivered by Borrower and any Guarantor shall be correct in all material respects, and each shall be deemed to be reaffirmed as of the date of each such Loan.

7. BORROWER COVENANTS. Borrower covenants with, and represents and warrants to, Lender that, from and after the date of this Agreement until the Obligations are paid and satisfied in full:

   a. *Tax Returns and Financial Information.* Within 15 days of the request of Lender, Borrower shall provide to Lender, for any given tax year, all filed federal, state and local tax returns and all other financial statements as Lender may reasonably request.

   b. *Existence; Business.* Borrower shall do all things necessary to (i) continue to engage primarily in business of the same general character as that now conducted, (ii) refrain from entering into any lines of business substantially different from the business or activities in which Borrower is presently engaged, and solely to the extent Borrower is not a natural Person, and (iii) maintain its existence as such in good standing.

   c. *Depository/Banking Services.* Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its affiliates.

   d. *Additional Assurances.* Borrower shall make, execute and deliver to Lender such promissory notes, instruments, documents, approvals, consents and other agreements as Lender or its attorneys may reasonably request to (i) evidence or confirm the amounts owed under this Agreement and (ii) verify the identity of Borrower and Guarantor(s) in accordance with applicable law.

8. EVENTS OF DEFAULT. Upon the occurrence of any of the following events (each, an "*Event of Default*"), Lender may, at its option, without any demand or notice whatsoever, declare this Agreement and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

   a. Any failure to make any payment when due of principal or accrued interest hereunder or any other Obligation.

   b. Any representation or warranty of Borrower in this Agreement or in any other agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Agreement or any other Obligation shall be materially inaccurate or misleading.

   c. Borrower or any Guarantor shall fail to observe or perform any other term or condition of this Agreement or any other term or condition set forth in any agreement, instrument, document, certificate, or financial statement evidencing, guarantying, or otherwise related to this Agreement or any other Obligation, or Borrower or any Guarantor shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for a period of 30 days.

   d. The dissolution of Borrower or of any endorser or Guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

   e. The creation of any lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or Guarantor hereof including, without limitation, any property deposited with Lender.

   f. (i) If any Guarantor defaults under its guaranty and such default continues beyond any applicable cure period; or (ii) if any Guarantor denies his, her or its obligations under his, her or its guaranty or attempts to limit or terminate his, her or its obligation to guarantee the Obligations.

   g. A commencement by the Borrower or Guarantor of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or Guarantor in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower or Guarantor, or for any

substantial part of the property of Borrower or Guarantor, or ordering the wind-up or liquidation of the affairs of Borrower or Guarantor; or the filing and pendency for 30 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or Guarantor of any general assignment for the benefit of creditors; or the failure of the Borrower or Guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or Guarantor in furtherance of any of the foregoing.

      h.    In the reasonable judgment of Lender in good faith, any material adverse change occurs in the existing or prospective financial condition of Borrower or Guarantor that may affect their ability to repay the Obligations, or the Lender deems Borrower insecure.

      9.    REMEDIES. After the occurrence of an Event of Default, Lender may at its option at any time, without notice, (i) accelerate the Obligations incurred hereunder and such Obligations shall be paid in full by Borrower to Lender immediately or (ii) proceed to enforce and protect its rights hereunder by an action at law or in equity or by any other appropriate proceedings; provided that the Obligations incurred hereunder shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code. Borrower shall pay all costs of collection incurred by Lender, including its attorney's fees, if this Agreement is referred to an attorney for collection, whether or not payment is obtained before entry of judgment.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

**FOR FLORIDA RESIDENTS ONLY:**
Notwithstanding the foregoing, any obligations of a deceased Guarantor shall not be given to a substitute Guarantor until the date on which a claim must be made against the decedents estate has passed.

      10.    LATE PAYMENTS; DEFAULT RATE; FEES. If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees that Lender may, without notice, increase the interest rate charged hereunder by five percentage points (5%) (the "*Default Rate*"). Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender. Lender may charge, and Borrower agrees to pay on the above Effective Date and on each anniversary date of such Effective Date during the term of this Note, a note processing fee, or a note renewal fee (as applicable), in an amount determined by Lender.

**FOR NORTH CAROLINA RESIDENTS ONLY**:
Notwithstanding the foregoing, in no event shall the Default Rate exceed four percent (4%) of the amount of the payment(s) past due. If the Loan(s) is paid in scheduled installments inclusive of interest paid in advance, no late payment charge may be charged, nor shall the Default Rate be imposed until the subject payment(s) is 30 days past due.

      1.    DEFINITIONS. The following definitions are used herein and throughout the Agreement:

      a.    "*Guarantor*" means, jointly and severally, each Person executing a Guaranty.

      b.    "*Guaranty*" means each Guaranty of Loan Agreement in a form previously approved by Lender.

      c.    "*Indebtedness*" means (i) all items (except items of capital stock, of capital surplus, of general contingency reserves or of retained earnings, deferred income taxes, and amount attributable to minority interest of any, swap obligations, rate management agreements, or similar rate management services) which in accordance with generally accepted accounting principles would be included in determining total liabilities as shown on the liability side of a balance sheet as at the date as of which Indebtedness is determined, (ii) all indebtedness secured by any mortgage, pledge, lien or conditional sale or other title retention agreement to which any property or asset owned or held is subject, whether or not the indebtedness secured thereby shall have been assumed (excluding non-capitalized leases which may amount to

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

title retention agreements but including capitalized leases), and (iii) all indebtedness of others which a Person has directly or indirectly discounted or sold with recourse or agreed (continently or otherwise) to purchase or repurchase or otherwise acquire, or in respect of which such Person or any subsidiary has agreed to apply or advance funds (whether by way of loan, stock purchase, capital contribution or otherwise) or otherwise to become directly or indirectly liable.

      d.    "*Person*" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, governmental authority or other entity.

      e.    "*Obligation(s)*" means all Loans, advances, Indebtedness and each and every other obligation or liability of Borrower or Guarantor owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, without relief from valuation of valuation or appraisement laws, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

      2.    INDEMNIFICATION. Borrower shall indemnify, defend, save and hold Lender, its officers, directors, attorneys, and employees harmless of, from and against all claims, demands, liabilities, judgments, losses, damages, costs and expenses, joint or several (including all accounting fees and attorneys' fees reasonably incurred), that Lender or any such indemnified party may incur arising out of this Agreement, any Guaranty, or any act taken by Lender hereunder or otherwise, whether or not Lender or any other indemnified party was negligent or otherwise at fault and whether or not any claim has merit, and shall apply even if the claim was caused or incurred due to the negligence (whether active or passive) or other conduct of Lender or other indemnified party, except for the willful misconduct or gross negligence of such indemnified party. The provisions of this section shall survive the termination of this Agreement.

      3.    RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Obligations against any and all such accounts.

      4.    ENTIRE AGREEMENT; NO ORAL MODIFICATIONS. This Agreement constitutes the entire understanding between Lender and Borrower as to the matters contemplated therein and may not be modified, amended or terminated except by written agreement signed by both Lender and Borrower.

      5.    SEVERABILITY. The declaration of invalidity of any provision of this Agreement shall not affect any part of the remainder of the provisions.

      6.    ASSIGNMENT. Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Agreement without the prior written consent of Lender. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Agreement without notice to, or prior consent from, the Borrower.

      7.    MODIFICATION; WAIVER OF LENDER. The modification or waiver of any of Borrower's obligations or Lender's rights under this Agreement must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Agreement shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co-borrower, endorser or Guarantor or (ii) any of its rights against any co-borrower, Guarantor or endorser.

      8.    DOCUMENT IMAGING, ELECTRONIC TRANSACTIONS AND THE UETA. Without notice to or consent of Borrower, Lender may create electronic images of this Agreement, any Guaranty, and the other agreements, documents or instruments and destroy paper originals of any such imaged documents. Provided that such images are maintained by or on behalf of Lender as part of Lender's normal business processes, Borrower agrees that such images have the same legal force and effect as the paper

originals, and are enforceable against Borrower. Furthermore, Borrower agrees that Lender may convert this Agreement, any Guaranty, or any other agreement or instrument from Borrower or Guarantor into a "transferrable record" as such term is defined under, and to the extent permitted by, the Uniform Electronic Transactions Act as in effect in the State of Ohio, as amended from time to time, and any successor statute, and any regulations promulgated thereunder from time to time (the "*UETA*"), with the image of such instrument in Lender's possession constituting an "authoritative copy" under the UETA.

9. ELECTRONIC COMMUNICATIONS. Borrower agrees to conduct business with Lender electronically and that the federal Electronic Signatures in Global and National Commerce Act applies to the parties' conduct including this Agreement. Further, Borrower agrees that no certification authority or other third party verification is necessary to validate Borrower's actions including electronic signatures and that the lack of such certification or third party verification will not in any way affect the enforceability of Borrower's actions including signature or any resulting contract between Borrower and Lender. Borrower agrees to allow Lender to deliver disclosures, notices, documents and information electronically to Borrower. Borrower acknowledges that many electronic communications sent and received over the internet can and are intercepted by unauthorized recipients, beyond the control of Lender. By authorizing the delivery of disclosures, notices, documents and other information electronically, Borrower understands and agrees that, to the extent permitted by applicable law, Lender will not be liable for any damages incident to the unauthorized receipt of electronic communications sent by Lender or received from Borrower.

10. WAIVER OF OFFSETS; DEFENSES; COUNTER CLAIMS. Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender to offset any obligations to make the payments required hereunder. No failure by Lender to perform any of its respective obligations hereunder will be a valid defense to, or result in any offset against, any payments which Borrower is obligated to make.

11. **NOTICE**: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning Fifth Third Bank, **National Association,** Lender is the Consumer Financial Protection Bureau, 1700 G Street, NW, Washington, D.C. 20552.

12. NOTICE TO OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

13. GOVERNING LAW; CONSENT TO JURISDICTION. This Agreement is delivered in, is intended to be performed in, will be governed, construed, and enforceable in accordance with and governed by the internal laws of, the State of Ohio, without regard to principles of conflicts of law. Borrower agrees that the state and federal courts in Ohio shall have exclusive jurisdiction over all matters arising out of this Agreement, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth in any application materials provided herewith.

14. **JURY WAIVER. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND ANY ENDORSER OR GUARANTOR HEREOF, KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

## COGNOVIT

15. WARRANT OF ATTORNEY. To the extent permitted by applicable law, Borrower authorizes any attorney of record to appear for it in any court of record in the State of Ohio or the Borrower's state of residence (at the discretion of Lender), after maturity of this Agreement, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal sum due herein together with interest, charges, court costs and attorneys' fees. To the extent permitted by

applicable law, stay of execution and all exemptions are hereby waived. If this Agreement or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, to the extent permitted by applicable law, the obligors shall pay to the holder of such obligations its attorneys' fees. EACH OF BORROWER AND ANY ENDORSER OR ANY GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR BORROWER WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH. BORROWER AGREES THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. BORROWER WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE BORROWER IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.

***WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.***

Borrower has reviewed and executed this Loan Agreement & Cognovit as of the first written date above.

BORROWER:

*DocuSigned by:*
*EVA SCHALLHORN*
7805A9B5CB92484...
(Signature)

By: LOW VOLTAGE SERVICE, INC.

Print Name: EVA SCHALLHORN
Its: Chief Executive Officer
Date: 3/21/2020
Case: 1:24-cv-00236-JPH Doc #: 2 Filed: 04/29/24 Page: 11 of 17 PAGEID #: 36
DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian



Bricker Graydon
7570 Bales Street
Suite 220
Liberty Township, OH 45069
(513) 755-9500 Office
www.brickergraydon.com

Patricia L. Hill
Partner
513-755-4554 Direct Phone
phill@brickergraydon.com

October 23, 2023

**VIA CERTIFIED AND REGULAR MAIL**

LOW VOLTAGE SERVICE, INC.
3915 Winston Drive
Hoffman Estates, IL 60192      a\

Eva Schallhorn
3915 Winston Drive       58
Hoffman Estates, IL 60192

Re:   *Loan Agreement with Fifth Third Bank, National Association –Notice of Acceleration and Demand Letter*

Dear Mrs. Schallhorn:

This law firm represents Fifth Third Bank, National Association ("Fifth Third") with respect to its lending relationship with LOW VOLTAGE SERVICE, INC. ("Borrower") by virtue of the Loan Agreement dated March 21, 2020 in the original principal amount of $95,000.00 (the "Agreement"). As of the date of this letter, Fifth Third exercised its rights under the Agreement to terminate all availability to Borrower under the Agreement, accelerate the balance and demand immediate repayment of the balance due under the Agreement. You are also personally responsible to Fifth Third for the repayment of the Agreement due to a Guaranty of Loan Agreement dated March 21, 2020.

As of October 18, 2023, the outstanding principal balance due under the Agreement is $93,000.00 plus accrued but unpaid interest in the amount of $2,188.29. Interest at the default rate of interest from the date of this letter, late fees and other charges shall continue to accrue until paid in full. Fifth Third is incurring legal expenses and costs, which in accordance with the Agreement and related loan documents are in addition to the total indebtedness.

If the entire balance due under the Agreement is not paid in full on or before **November 3, 2023**, Fifth Third will take further legal action to collect the balance due and owing including but not limited to institution of the default rate of interest. Fifth Third reserves all rights and remedies with respect to your and Borrower's depository accounts held with Fifth Third.

Please be further advised that neither the receipt of any partial payment by Fifth Third nor any other action by Fifth Third or Borrower shall constitute or be deemed or construed as a cure of any existing default under the loan documents, a modification of the loan documents, a reinstatement or satisfaction of the loan, or a waiver, modification, relinquishment or forbearance by Fifth Third. Nothing contained in this letter is intended to create or constitute a waiver, modification, relinquishment or forbearance by Fifth Third of any of its rights and remedies in connection with any defaults that may now or hereafter exist under the relevant loan documents,

Certified Article Number
9414 7266 9904 2204 7165 91
SENDER'S RECORD

Certified Article Number
9414 7266 9904 2204 7160 58
SENDER'S RECORD

LOW VOLTAGE SERVICE, INC.
October 23, 2023
Page 2



all of which rights and remedies are expressly reserved.

      If you have questions regarding this notice, or to arrange for payment of the balance due and owing under the Agreement, please contact Lonny King, Assistant Vice President at Fifth Third, at (616) 653-8522 or Lonny.King@53.com.

                                                 Sincerely,

                                                 BRICKER GRAYDON LLP

                                               *Patricia Hill*

                                               Patricia L. Hill

c:     Lonny King (via e-mail)

18956254v1

Case: 1:24-cv-00236-JPH Doc #: 2 Filed: 04/29/24 Page: 14 of 17 PAGEID #: 39
DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## GUARANTY OF LOAN AGREEMENT

As an inducement to FIFTH THIRD BANK, NATIONAL ASSOCIATION, a federally chartered institution ("*Lender*"), to enter into the Loan Agreement of even date herewith [by and between **LOW VOLTAGE SERVICE, INC.** ("*Borrower*") **and Lender/appended hereto**] (the "*Agreement*"), the undersigned (the "*Guarantor*") has executed and delivered this Guaranty of Loan Agreement (this "*Guaranty*") and hereby, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the full and punctual payment and performance of all the Obligations of Borrower, whether present or future. This is a guaranty of payment and not of collection. In case the Borrower fails to pay any Obligations when due, the Guarantor agrees to make such payment punctually as and when the same shall become due, whether at stated maturity, by acceleration or otherwise, and as if such payment were made by the Borrower. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms as in the Agreement, a copy of which has been provided to Guarantor.

1. **GUARANTY ABSOLUTE AND UNCONDITIONAL**. Guarantor agrees that its Obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement it may have (now or in the future) by reason of:

    a. Any illegality, invalidity or unenforceability of any Obligation or the Agreement or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations.

    b. Any change in the time, place or manner of payment or performance of, or in any other term of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Agreement.

    c. Any taking, exchange, substitution, release, impairment, amendment, waiver, modification or non-perfection of any collateral or any other guaranty for the Obligations, or any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of the Obligations.

    d. Any default, failure or delay, willful or otherwise, in the performance of the Obligations.

    e. Any change, restructuring or termination of the corporate structure, ownership or existence of Guarantor or Borrower or any insolvency, bankruptcy, reorganization or other similar proceeding affecting Guarantor or Borrower or its assets or any resulting restructuring, release or discharge of any Obligations.

    f. Any failure of Borrower to disclose to Guarantor any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of Borrower now or hereafter known to Borrower, Guarantor waiving any duty of Borrower to disclose such information.

    g. The failure of any other guarantor or third party to execute or deliver this Guaranty or any other guaranty or agreement, or the release or reduction of liability of Guarantor or any other guarantor or surety with respect to the Obligations.

    h. The failure of Borrower to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of any Agreement or otherwise.

    i. The existence of any claim, set-off, counterclaim, recoupment or other rights that Guarantor may have against Borrower (other than a defense of payment or performance).

    j. Any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Agreement or any existence of or reliance on any representation by Borrower that might vary the risk of Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of, Guarantor.

    k. Any modification, supplement or restatement (including the grant of an extension of time for payment and performance) of any of the Agreement.

    l. (i) all rights and remedies accorded by applicable law to sureties and guarantors, (ii) defenses related to suretyship or impairment of collateral or other right of discharge (iii) defenses arising by reason of any disability or defense of Borrower.

    m. FOR GEORGIA RESIDENTS ONLY: Guarantor waives any right to require Lender to take any action against Borrower as provided in O.C.G.A. § 10-7-24, and any all protections of and any and all defenses under O.C.G.A. § 44-14-161.

Case: 1:24-cv-00236-JPH Doc #: 2 Filed: 04/29/24 Page: 15 of 17 PAGEID #: 40

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

2. <u>CERTAIN WAIVERS;
ACKNOWLEDGMENTS</u>. Guarantor further acknowledges and agrees as follows:

    a.    Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.

    b.    This Guaranty is a guaranty of payment and performance and not of collection. Borrower shall not be obligated to enforce or exhaust its remedies against any other guarantors or under the Agreement before proceeding to enforce this Guaranty.

    c.    This Guaranty is a direct guaranty and independent of the obligations of the Agreement. Lender may resort to Guarantor for payment and performance of the Obligations whether or not Borrower shall have resorted to any collateral therefor or shall have proceeded against any other guarantors with respect to the Obligations. Lender may, at Lender's option, proceed against Guarantor, Borrower, or any other guarantor, jointly and severally, or against Guarantor only without having obtained a prior judgment against Borrower or any such guarantors.

    d.    Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Lender protect, secure, perfect or insure any lien or any property subject thereto.

    e.    Guarantor agrees that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any payment of any Obligation is voided, rescinded or recovered or must otherwise be returned by Lender upon the insolvency, bankruptcy or reorganization of Borrower.

    f.    Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

3. <u>TAX RETURNS AND FINANCIAL INFORMATION</u>. Within 15 days of the request of Lender, Guarantor shall provide to Lender, for any given tax year, all filed federal, state and local tax returns and all other financial statements as Lender may reasonably request.

4. <u>SUBROGATION</u>. Guarantor waives and shall not exercise any rights that it may acquire by way of subrogation, contribution, reimbursement or indemnification for payments made under this Guaranty until all Obligations shall have been indefeasibly paid and discharged in full.

5. <u>CUMULATIVE RIGHTS</u>. Each right, remedy and power hereby granted to Lender or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Lender at any time or from time to time.

FOR FLORIDA RESIDENTS ONLY: Notwithstanding the foregoing, any obligations of a deceased guarantor shall not be given to a substitute guarantor until the date on which a claim must be made against the decedents estate has passed.

6. <u>ENTIRE AGREEMENT; NO ORAL MODIFICATIONS</u>. This Guaranty constitutes the entire understanding between Lender and Guarantor as to the matters contemplated therein and may not be modified, amended or terminated except by written agreement signed by both Lender and Guarantor.

7. <u>SEVERABILITY</u>. The declaration of invalidity of any provision of this Guaranty shall not affect any part of the remainder of the provisions.

8. <u>ASSIGNMENT</u>. Guarantor agrees not to assign any of Guarantor's rights, remedies or obligations described in this Guaranty without the prior written consent of Lender. Guarantor agrees that Lender may assign some or all of its rights and remedies described in this Guaranty without notice to, or prior consent from, the Guarantor.

9. <u>RIGHT OF SETOFF</u>. To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

extent permitted by applicable law, to hold these funds if there is an Event of Default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

10. <u>MODIFICATION; WAIVER OF LENDER</u>. The modification or waiver of any of Guarantor's obligations or Lender's rights under this Guaranty must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Guarantor's obligations under this Guaranty shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co-borrower, endorser or guarantor or (ii) any of its rights against any co-borrower, guarantor or endorser.

11. <u>DOCUMENT IMAGING, ELECTRONIC TRANSACTIONS AND THE UETA</u>. Without notice to or consent of Borrower, Lender may create electronic images of this Agreement, any Guaranty, and the other agreements, documents or instruments and destroy paper originals of any such imaged documents. Provided that such images are maintained by or on behalf of Lender as part of Lender's normal business processes, Borrower agrees that such images have the same legal force and effect as the paper originals, and are enforceable against Borrower. Furthermore, Borrower agrees that Lender may convert this Agreement, any Guaranty, or any other agreement or instrument from Borrower or Guarantor into a "transferrable record" as such term is defined under, and to the extent permitted by, the Uniform Electronic Transactions Act as in effect in the State of Ohio, as amended from time to time, and any successor statute, and any regulations promulgated thereunder from time to time (the "*UETA*"), with the image of such instrument in Lender's possession constituting an "authoritative copy" under the UETA.

12. <u>ELECTRONIC COMMUNICATIONS</u>. Borrower agrees to conduct business with Lender electronically and that the federal Electronic Signatures in Global and National Commerce Act applies to the parties' conduct including this Agreement. Further, Borrower agrees that no certification authority or other third party verification is necessary to validate Borrower's actions including electronic signatures and that the lack of such certification or third party verification will not in any way affect the enforceability of Borrower's actions including signature or any resulting contract between Borrower and Lender.

Borrower agrees to allow Lender to deliver disclosures, notices, documents and information electronically to Borrower. Borrower acknowledges that many electronic communications sent and received over the internet can and are intercepted by unauthorized recipients, beyond the control of Lender. By authorizing the delivery of disclosures, notices, documents and other information electronically, Borrower understands and agrees that, to the extent permitted by applicable law, Lender will not be liable for any damages incident to the unauthorized receipt of electronic communications sent by Lender or received from Borrower.

13. **<u>JURY WAIVER</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, WAIVES THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

14. **<u>FOR KENTUCKY RESIDENTS ONLY – MAXIMUM LIABILITY.</u> In compliance with KRS Section 371.065, the maximum aggregate liability for Guarantor hereunder is $95,000.00, plus accrued but unpaid interest thereon, insurance premiums paid by Lender, all taxes and assessments due and unpaid fees, charges and costs of collecting the guaranteed Obligations, including reasonable attorney's fees, and any and all costs and expenses provided for in the Agreement. This Guaranty shall terminate (i) on the Maturity Date, provided the Obligations reflected under the Agreement are paid in full on such date; (ii) on the date the Obligations reflected under the Agreement are satisfied in full if such full satisfaction occurs prior to the Maturity Date; or (iii) the date the Obligations reflected under the Agreement are paid in full if such Obligations are not fully satisfied on or before the Maturity Date.**

---

## <u>COGNOVIT NOTE</u>

15. <u>WARRANT OF ATTORNEY</u>. To the extent permitted by applicable law, Guarantor authorizes any attorney of record to appear for it in any court of record in the State of Ohio or the Guarantor's state of residence (at the discretion of Lender), after maturity of this Guaranty, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal

DocuSign Envelope ID: FEDED789-0141-4D09-968A-DA714368884C

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

sum due herein together with interest, charges, court costs and attorneys' fees. To the extent permitted by applicable law, stay of execution and all exemptions are hereby waived. To the extent permitted by applicable law, if this Guaranty or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, the obligors shall pay to the holder of such obligations its attorneys' fees. GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR GUARANTOR WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH. GUARANTOR AGREES THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. GUARANTOR WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE GUARANTOR IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.

***WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.***

IN WITNESS WHEREOF, Guarantor has executed this Guaranty of Loan Agreement and Cognovit as of the first written date above.

DocuSigned by:
*EVA SCHALLHORN*
7805A9B5CB92484...
_____
(Signature)

EVA SCHALLHORN
(Print Name)

3/21/2020
_____
(Date)